IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRCT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KEITH MAS SIMS, JR., | ) | CASE NO.  4:19-CV-02342-SO |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| WARDEN DAVID W GRAY, | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| Defendant. | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the Petition of Keith Mas Sims, Jr.  ("Sims" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  Sims is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case *State v. Sims*, No. 14 CR 1143.  For the following reasons, the undersigned recommends that the Petition be DENIED.

## I.     Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir.

1

2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized

the facts underlying Sims' conviction as follows:

> {¶ 2} On October 25, 2014, Julisa Harmon, Domanisha Morris, and Shamar Harmon were visiting their friend Miguel at his home in Youngstown, Ohio. This group heard a gunshot and went outside Miguel's home to investigate. They saw appellant and another group of girls across the street from Miguel's home. Julisa's group and Miguel went across the street to appellant's home to confront him. At some point, appellant pulled out a gun, set it down, and began fighting Miguel. During the fight between appellant and Miguel, Julisa, Domanisha, and Shamar got into a verbal altercation with the other group of girls. After the verbal altercation, Julisa, Domanisha, and Shamar got into a car and drove to Julisa's house.

> {¶ 3} At Julisa's house, Julisa and Domanisha told Tamra Donlow and Clenesha Jackson about the altercations at Miguel's home. Julisa, Domanisha, Tamra, and Clenesha decided to drive back to Miguel's home that same night to check on him. On the way to Miguel's home, Julisa's group picked up another girl, Shaniece Wells.

> {¶ 4} When Julisa's group returned to Miguel's neighborhood, they went to go check on Miguel. Once Julisa's group was ready to leave Miguel's neighborhood again, they encountered the other group of girls with whom they had an altercation earlier. Another verbal altercation ensued between the two groups. This verbal altercation ended when Shaniece and a girl from the opposing group realized they were related.

> {¶ 5} After the altercation, Julisa's group began walking back to their vehicle. Before they reached the vehicle, three gunshots were fired in their direction. Two of the gunshots struck Shaniece: one through her abdomen and one through her left buttock. Shaniece died as a result of the gunshot wounds she suffered.

> {¶ 6} On November 6, 2014, appellant was arrested and charged with Shaniece's murder. In addition to the murder and felonious assault charges,

2

appellant faced firearm specifications pursuant to R.C. 2941.145(A) on all counts.

{¶ 7} Numerous pretrial motions were filed by appellant pro se, appellant's counsel, and the plaintiff-appellee, the State of Ohio. Appellant was incarcerated for the entire pretrial period and at no point waived his right to have a speedy trial.

{¶ 8} On August 20, 2015 and September 3, 2015, appellant filed pro se motions to dismiss the charges on the basis that his speedy trial right was violated. On September 14, 2015, the trial court denied these motions on the basis that appellant's counsel moved for and was granted a previous continuance which tolled the running of his speedy trial clock.

{¶ 9} On December 16, 2015, appellant filed another pro se motion to dismiss the charges on the basis that his speedy trial right was violated. The trial court overruled this motion on the same day.

{¶ 10} Appellant's trial was held on March 28, 2016. The state called numerous witnesses. At issue in this appeal is the testimony of the four eyewitnesses to Shaniece's death. The four eyewitnesses who testified at trial were Julisa, Clenesha, Tamra, and Domanisha. Julisa, Clenesha, and Tamra all testified that they did not see who fired the shots that hit Shaniece. But Domanisha testified that she saw appellant fire his gun in the group's direction. Domanisha also testified that she heard appellant yell "I shot one of them bitches."

{¶ 11} The jury returned guilty verdicts on all counts. On May 24, 2016, the trial court held a sentencing hearing. The trial court merged appellant's three guilty verdicts for sentencing purposes as Shaniece was the victim in all three counts. The trial court sentenced appellant to a minimum fifteen years of incarceration for the murder in violation of R.C. 2903.02(A) conviction and an additional three years for the accompanying firearm specification. The trial court ordered these sentences to run consecutively for a minimum total of eighteen years of incarceration. . . .

*State v. Sims*, 2018-Ohio-2916, 2018 WL 3583271, at **1-2 (Ohio Ct. App. July 16, 2018).

3

## II.       Procedural History

**A.       Trial Court Proceedings**

On November 6, 2014, a Mahoning County Grand Jury indicted Sims on the following charges: (1) Murder, in violation of O.R.C. § 2903.02(A)(D); (2) Murder, in violation of O.R.C. § 2903.02(B)(D); and (3) Felonious Assault, in violation of O.R.C. § 2903.11(A)(2)(D).  (Doc. No. 9-1, Ex. 1.)   Each count included a firearm specification.  (*Id.*)  Sims pled not guilty and the case was set for a jury trial on December 15, 2014.  (Doc. No. 9-1, Ex. 2.)

On November 19, 2014, Sims, through counsel, filed a request for discovery and bill of particulars. (Doc. No. 9-1, Ex. 3.)  On November 21, 2014, the State responded to Sims's discovery request and filed its demand for discovery.  (Doc. No. 9-1, Ex. 4.)

On December 5, 2014, Sims filed a motion to continue the December 15, 2014 jury trial since discovery was not complete.  (Doc. No. 9-1, Ex. 5.)  On December 11, 2014, the trial court granted the motion and set a pretrial hearing for January 29, 2015.  (Doc. No. 9-1, Ex. 6.)

On February 3, 2015, following the January 29, 2015 pretrial hearing, the court rescheduled the jury trial for August 24, 2015.  (Doc. No. 9-1, Ex. 7.)

On August 10, 2015, Sims filed a second motion to continue the jury trial in order to hire a ballistics expert.  (Doc. No. 9-1, Ex. 8.)  Counsel requested the case be reset as convenient to the trial

4

court's docket. (*Id.*) The trial court granted the motion, ordered time tolled to Sims, and set a pretrial hearing for October 1, 2015. (Doc. No. 9-1, Ex. 9.)

On August 20, 2015, Sims, *pro se*, filed a motion to dismiss for violations of his speedy trial rights. (Doc. No. 9-1, Ex. 10.) On September 3, 2015, Sims filed a second *pro se* motion to dismiss for speedy trial violations. (Doc. No. 9-1, Ex. 11.) On September 14, 2015, the trial court overruled Sims' September 3, 2015 motion to dismiss because time had already been tolled when his attorney was granted a second continuance. (Doc. No. 9-1, Ex. 12.)

On October 6, 2015, following the October 1, 2015 pretrial hearing, the trial court set a new trial date of December 14, 2015. (*Id.*)

On December 10, 2015, defense counsel filed a third motion to continue the jury trial. (Doc. No. 9-1, Ex. 13.) Defense counsel stated as grounds for the motion that his expert witness had notified him that day that he had been laid off by his employer on December 4, 2015 and counsel needed time to locate current contact information in order to issue the subpoena. (*Id.*) On December 16, 2015, Sims, *pro se*, filed his third motion to dismiss for speedy trial violations. (Doc. No. 9-1, Ex. 15.) That same day, the trial court conducted a pretrial hearing, overruled the motion to dismiss, and noted the jury trial was to be set for the Court's first available date and by agreement of the parties. (Doc. No. 9-1, Ex. 14.) The trial court set a new trial date of March 28, 2016. (*Id.*)

Sims' jury trial began on March 28, 2016. (Doc. No. 9-1, Ex. 16.) On April 1, 2016, the jury found Sims guilty on all counts and specifications. (*Id.*)

5

On June 16, 2016, following a sentencing hearing on May 24, 2016, the trial court imposed an aggregate sentence of 18 years to life imprisonment.  (Doc. No. 9-1, Ex. 17.)

**B.      Direct Appeal**

On June 21, 2016, Sims, through counsel, filed a timely notice of appeal to the Seventh District Court of Appeals.  (Doc. No. 9-1, Ex. 18.)  In his appellate brief, Sims raised the following assignments of error:

> I.      Appellant's right to a speedy trial, pursuant to the United States and Ohio Constitutions and the Revised Code, was violated and it was error for the trial court to deny his motions to dismiss.

> II.     Appellant's conviction was against the manifest weight of the evidence based, in part, on the conflicting stories of the State's witnesses.

(Doc. No. 9-1, Ex. 19.)  The State filed a brief in response.  (Doc. No. 9-1, Ex. 20.)

On July 16, 2018, the state appellate court affirmed Sims' convictions.  (Doc. No. 9-1, Ex. 21.) *See also Sims*, 2018-Ohio-2916, 2018 WL 3583271, at *7.

On August 28, 2018, Sims, proceeding *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio. (Doc. No. 9-1, Ex. 22.)  In his Memorandum in Support of Jurisdiction, Sims raised the following Propositions of Law:

> I.      A defendant in a criminal case is entitled to protection from intentional and prejudicial postaccusation [sic] delay and has [a] right to a speedy trial guaranteed by the Ohio and United States Constitutions.

> II.     A defendant's conviction based entirely on conflicting eyewitness testimony cannot adequately meet the standard for the manifest weight of evidence.

6

(Doc. No. 9-1, Ex. 23.)  The State waived filing a memorandum in response.  (Doc. No. 9-1, Ex. 24.)

On October 10, 2018, the Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac.R. 7.08(B)(4).   (Doc. No. 9-1, Ex. 25.)

**C.**    **Application to Reopen Appeal under Ohio App. R. 26(B)**

On October 29, 2018, Sims filed a *pro se* Application to Reopen Appeal Pursuant to Ohio App. R. 26(B).  (Doc. No. 9-1, Ex. 26.)  Sims' Application raised the following arguments:

I.    Failure of appellate counsel to meet with Appellant to discuss case facts, assignments of error, options, strategy prior to filing an appeal on behalf of the Appellant was deficient and was ineffective assistance of appellate counsel.

II.    Failure of trial counsel to meet with Defendant more than a few individual times, each meeting less than an hour, was ineffective assistance of trial counsel because counsel was unable to get adequate facts and complicated murder case was not investigated and defendant was poorly represented as a result.

III.    Trial counsel failed to investigate State's weak case with only circumstantial evidence, faulty witness testimony, lax police investigation and crime scene processing – never presenting these issues at trial was ineffective assistance at trial.

IV.    Trial counsel failed to subpoena seven out of eleven eyewitnesses, many who's [sic] statements to police contradict statements and testimony of State's primary and only witness claiming to see Defendant-Appellant shooting a gun.

V.    Trial counsel failure to raise selective prosecution prior to trial was ineffective assistance of trial counsel.

VI.    Appellate counsel's failure to properly present the speedy trial argument – relying on incorrect dates and weaker argument of effect of tolling events.

7

VII.  Trial counsel's failure to seek exculpatory evidence via discovery – Ohio trooper's report regarding the statements made at the scene of hospital when shooting victim was removed from vehicle for medical care.

VIII.  Trial counsel's failure to challenge severity of offenses and raise possibility of justifiable or voluntary homicide as elements of murder fail under direct examination of provocation, self-protection and fear for safety.

IX.  Trial counsel failed to submit a motion to dismiss on the above grounds to challenge the cumulative "new effect" of errors and fundamental miscarriage of justice was ineffective assistance of counsel.

X.  The trial court violated the Appellant's rights when it allowed the conviction to stand against the sufficiency of evidence and the manifest weight of evidence.

(*Id*.)  The State filed a response in opposition.  (Doc. No. 9-1, Ex. 27.)

On December 21, 2018, the state appellate court denied Sims' Application to Reopen Appeal. (Doc. No. 9-1, Ex. 28.)  *See also State v. Sims*, 2018-Ohio-5388, 2018 WL 6928180 (Ohio Ct. App. Dec. 21, 2018).

**D.  Federal Habeas Petition**

On October 8, 2019, Sims, through counsel, filed a Petition for Writ of Habeas Corpus in this Court and asserted the following grounds for relief:

**GROUND ONE**:  The Ohio Courts ruled contrary to, or unreasonably applied, clearly-established Supreme Court precedent by failing to find that Sims' federal right to speedy trial had been violated.

**Supporting Facts**:  Sims was held for 508 days from his arrest on November 6, 2014 to his trial on March 28, 2016. He was unable to post bond and remained incarcerated for that period. At no time did he personally execute a waiver of his right to a speedy trail. He was

8

represented by an attorney who failed to respond to a state demand for discovery. When his counsel requested a continuance, the trial court reset the trial date for four months out (from August 24, 2015 to December 14, 2015) and then sua sponte from March 28, 2016, another 102 days later. For months, Sims was filing pro se motions to dismiss for speedy trial violations.

**GROUND TWO**:  The Ohio courts entered decisions that were unreasonable in light of the trial record by failing to find that Sims' federal rights to speedy trial were violated.

**Supporting Facts**:  Same supporting facts as noted under Ground One.

**GROUND THREE**:  The Ohio Courts ruled contrary to, or unreasonable applied, clearly-established Supreme Court precedent by failing to find that the evidence was insufficient to support the verdicts/convictions.

**Supporting Facts**:  Same supporting facts as noted under Ground One.

**GROUND FOUR**:  The Ohio courts entered decisions that were unreasonable in light of the trial record by failing to find that the state's evidence was insufficient to support the verdicts and convictions.

**Supporting Facts**:  Same supporting facts as noted under Ground One.

(Doc. No. 1.)  Sims also filed a brief in support of his habeas petition.  (Doc. No. 8.)

On December 24, 2019, Warden David Gray ("Respondent") filed his Return of Writ. (Doc. No. 9.)  Sims filed a Traverse on January 22, 2020.  (Doc. No. 10.)

9

### III. Exhaustion and Procedural Default

**A.**    **Legal Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b), (c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97S.Ct. 2497, 53 L.Ed.2d 594 (1977)).  A claim may become procedurally defaulted in two ways. *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.; see also Maupin v. Smith*, 785F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[1]  *Id.*

---

[1] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.*  Thus, if an Ohio

---

"prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp.2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

11

petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id.* Where there is strong evidence

12

of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v.LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). *See also Jones v. Bradshaw*, 489 F. Supp. 2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir. 2012).

## B.   Application to Petitioner

### 1.   Grounds One and Two

Sims argues that he "fairly presented and exhausted a federal speedy-right-violation claim" to the state courts. (Doc. No. 8 at 8.) Sims asserts that through counsel, he argued to the Ohio appeals court that his right to a speedy trial, as guaranteed by the U.S. and Ohio constitutions, was violated. (*Id.* at 9.) Proceeding *pro se* before the Supreme Court of Ohio after the appeals court affirmed his conviction, Sims

13

argued the Supreme Court's decision in *Barker v. Wingo*, 407 U.S. 514 (1972) demonstrated constitutional error in the delay in his case.  (*Id.*)

Respondent disagrees that Sims fairly presented a federal speedy trial claim to the Ohio courts. (Doc. No. 9 at 9.)  Respondent argues, "The focus of Sims's speedy trial claim on direct appeal was a violation of speedy trial rights as established under Ohio's state statutory scheme."  (*Id.*)  While Respondent acknowledges Sims asserted a federal speedy trial claim in his memorandum in support of his appeal to the Supreme Court of Ohio, Respondent maintains that "a criminal constitutional question cannot be raised in the Supreme Court [of Ohio] unless it was presented and argued in the court below." (*Id.* at 16) (citation omitted).  Further, the Supreme Court of Ohio "lacks jurisdiction to consider constitutional issues not raised or considered on direct appeal."  (*Id.*)  Respondent asserts Sims' federal speedy trial claim should have been argued on direct appeal and is now barred by *res judicata*; as a result, this claim is procedurally defaulted.  (*Id.* at 9.)  Respondent argues Sims fails to show cause and prejudice to excuse the default.  (*Id.* at 27-30.)

In his Traverse, Sims argues that he invoked the United States Constitution in his appellate brief to the Ohio court of appeals, although "[a]dmittedly, Sims' counsel did not go on to argue precisely why the federal aspect of the speedy trial right was violated."  (Doc. No. 10 at 1-2.)  However, Sims asserts that even if the Court were to find that he did not present a federal speedy trial claim to the appellate court, because he raised it *pro se* to the Supreme Court of Ohio, he fairly presented this claim.  (*Id.* at 2.)  Sims relies on *Caver v. Straub*, 349 F.3d 340 (6th Cir. 2003) to support his position.  (*Id.*)

14

As another court in this Circuit recently explained:

> In order to have properly exhausted a federal habeas claim, the substance of the claim must have been presented to the state courts as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citations omitted). Rather, "the legal and factual basis of the claim must be 'fairly presented' to the state courts so that they have an opportunity to remedy the alleged constitutional violation." *Arnold v. Warden, Lebanon Corr. Inst.*, 832 F. Supp. 2d 853, 860 (S.D. Ohio 2011) (citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)).

*Owens v. Perry*, No. 1:17-cv-00105, 2019 WL 6250763, at *8 (M.D. Tenn. Nov. 22, 2019).

Here, Sims presented his speedy trial argument to the appellate court under state law exclusively. Although Sims invoked the United States Constitution in the heading and first sentence of his speedy trial argument, his appellate brief focused solely on the application of O.R.C. § 2945.71.  (Doc. No. 9-1, Ex. 19, PageID #161-67.)   In another habeas case, a petitioner argued he had fairly presented his Confrontation Clause claim "by citing the United States Constitution, 'due process,' and his right to a 'fair trial,'" some of the state precedent he cited in his appellate brief contained Confrontation Clause analysis, and the preclusion of a line of inquiry "should have, by itself, alerted the Ohio Court of Appeals to a possible violation of the Confrontation Clause."  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). The Sixth Circuit held McMeans failed to "fairly present" his Confrontation Clause claim to the state courts:

15

> We are of the opinion that the petitioner did not "fairly present" his claim. In his direct appeal, the petitioner focused entirely on the applicability of Ohio's rape shield law. Ohio Rev.Code Ann. § 2907.02. He did not cite any federal precedent and his appellate brief only alleges that the trial judge's limitation on cross-examination denied him a "fair trial" and "due process." As this court recognized in *Franklin,* this is not sufficient to alert a state court that an appellant is asserting the violation of a specific constitutional right. While it is true that a few of the state cases cited by the petitioner on direct appeal contain references to the Confrontation Clause, the majority of those cases were concerned with Ohio evidence law. We do not think that a few brief references to the Confrontation Clause in isolated cases is enough to put state courts on notice that such a claim had been asserted. Thus, we hold that the petitioner failed to "fairly present" his Confrontation Clause claim to the Ohio courts.

*Id.* at 682.

As the United States Supreme Court has made clear, "mere similarity of claims is insufficient to exhaust." *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 276 (1971); *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). The state appellate court, when presented with Sims' speedy trial claim under O.R.C. § 2945.71, "understandably confined its analysis to the application of state law." *Id.*

Sims asserts that even if the Court were to find that he did not present a federal speedy trial claim to the appellate court, because he raised it *pro se* to the Supreme Court of Ohio, he fairly presented this claim. (Doc. No. 10 at 2.) Sims relies on the Sixth Circuit's opinion in *Caver* for this proposition. (*Id.*) However, in *Caver*, the petitioner's habeas arguments in part concerned the failure of his appellate counsel

16

to raise certain issues on appeal, including a claim of ineffective assistance of trial counsel. 349 F.3d at

346-47. Based on those facts, the Sixth Circuit determined:

> Certainly, the issue was not raised in his direct appeal to the Michigan Court
> of Appeals. He did, however, raise the issue in his pro se appeal to the
> Michigan Supreme Court, asserting that he had wanted to present an
> ineffective assistance of trial counsel claim in his intermediate appeal, but that
> appellate counsel had denied him that opportunity. Thus, the Attorney
> General's argument in this regard must fail. Given the less stringent standards
> and active interpretation that are afforded to the filings of pro se
> litigants, *Urbina v. Thoms,* 270 F.3d 292, 295 (6th Cir.2001), these aspects of
> Caver's application support a finding that Caver "fairly presented" the trial
> counsel ineffectiveness claim.

*Id.* at 347 (footnote omitted). In a footnote, the Sixth Circuit explained that even if Caver had failed to

fairly present this claim, Caver demonstrated cause and prejudice to excuse the procedural default. *Id.* at

n.3. The specific facts in *Caver*, not present here, do not alter the fact that "[u]nder Ohio law, a

constitutional question cannot ordinarily be raised before the Ohio Supreme Court unless it was first

presented to the intermediate appellate court." *Reed v. Jenkins*, Case No. 3:15-cv-00620, 2016 WL

6311235, at *6 (N.D. Ohio June 22, 2016) (citations omitted), *report and recommendation adopted by*

2016 WL 6393350 (N.D. Ohio Oct. 27, 2016).

     As a result, the Court finds Grounds One and Two of the instant Petition are procedurally

defaulted.

     Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner

demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim

17

would result in a fundamental miscarriage of justice.  *See Lundgren*, 440 F.3d at 763 (citing *Wainwright*, 433 U.S. at 87.)  As noted above, "[d]emonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin*, 434 F.3d at 417 (6th Cir. 2006) (quoting *Murray*, 477 U.S. at 488).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason*, 320 F.3d at 629.  Here, Sims has neither presented any cause for his default nor has he alleged ensuing prejudice.[2]  In addition, while Sims alludes to his actual innocence (Doc. No. 8 at 23), Sims has not come forward with any new, reliable evidence to support a credible claim of actual innocence.

Accordingly, and for all the reasons set forth above, it is recommended Grounds One and Two be dismissed as procedurally defaulted.

---

[2] The Court notes ineffective assistance of counsel may serve as cause to excuse the procedural default of a claim if it rises to the level of a constitutional violation, but only if the underlying claim of ineffective assistance of counsel is not itself defaulted.  *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (finding unless the state prisoner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, that claim cannot serve as cause for another procedurally defaulted claim).  While Sims filed a 26(B) application and argued appellate counsel failed to properly present his speedy trial argument, it is unclear from his application that part of his claim included appellate counsel's failure to present his federal speedy trial claim.  (Doc. No. 9-1, Ex. 26.)  However, even assuming *arguendo* Sims raised this claim in his 26(B) application, the state appellate court found Sims' application untimely (Doc. No. 9-1, Ex. 28), and Sims failed to appeal the state appellate court's decision to the Supreme Court of Ohio.  (*See* Doc. No. 9-1.)  Thus, even if Sims had argued the ineffective assistance of appellate counsel was cause to excuse the default of this claim, such an argument would be without merit because any underlying ineffective assistance of counsel claim is itself defaulted.

18

### 2.  Grounds Three and Four

Sims, relying on the Sixth Circuit decision in *Nash v. Eberlin*, 258 F. App'x 761 (6th Cir. 2007), argues that he fairly presented his sufficiency of the evidence claim by raising a manifest weight of the evidence claim to the state courts.  (Doc. No. 8 at 21.)  Respondent disagrees, arguing that Sims' "underlying factual arguments" regarding the credibility of witnesses "could not have been resolved by a sufficiency of the evidence analysis in state court."  (Doc. No. 9 at 19.)  As Sims' sufficiency of the evidence claims in Grounds Three and Four can easily be decided on the merits, the Court declines to find whether Sims fairly presented his sufficiency of the evidence claim in this case by raising a manifest weight of the evidence claim in the state courts.  *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (courts may skip complicated "procedural-bar issues" if the merits are easily resolvable against the habeas petitioner").

### IV. Review on the Merits

### A.  Legal Standard

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings (as opposed to the dicta) of the United States Supreme Court.  *See Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012); *Renico v Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Shimel v.Warren,* 838 F.3d 685, 695 (6th Cir. 2016); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005).  Indeed, the Supreme Court has indicated that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 567 U.S. at 48-49; *Howes v. Walker*, 567 U.S. 901, 132 S.Ct. 2741, 183 L.Ed.2d 612 (2012).  *See also Lopez v.Smith*, ⸺ U.S. ⸺, 135 S.Ct. 1, 4, 190 L.Ed.2d 1 (2014) (per curiam) ("Circuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.' " (quoting *Marshall v. Rodgers*, 569 U.S. 58, 133 S.Ct. 1446, 1450, 185 L.Ed.2d 540 (2013))).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court

20

decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  *See also Shimel*, 838 F.3d at 695.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor,* 529 U.S. at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 F. App'x 511, 516 (6th Cir. 2006) (citing *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id*. at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal."  *Id*. (internal

21

quotation marks omitted).   Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be."

Sims argues this is an eyewitness case, and the testimony of one witness – Domanisha Morris – "differed substantially" from the testimony of the other three eyewitnesses on "significant facts."  (Doc. No. 8 at 22-23.)  Sims asserts Morris was the only witness who saw Sims fire the shots, and she testified at trial that she disliked Sims.  (*Id.*)  Sims further argues there was "not much corroboration" of Morris' testimony.  (*Id.* at 23-24.)   Therefore, Sims asserts that even viewing the evidence in a light most favorable to the prosecution, "no rational trier of fact could have relied on Domanisha's testimony to find Sims guilty."  (*Id.* at 24) (citation omitted).

Respondent asserts that the Court may not consider the credibility of witnesses or weigh the evidence on habeas review, and that the record, the evidence admitted at trial, and the testimony elicited at trial by the State supported Sims' convictions.  (Doc. No. 9 at 37.)  Respondent argues, "To the extent that Sims argues that his convictions are based upon insufficient evidence because the testimony of the witnesses conflicted or was unreliable makes no difference within the context of a sufficiency of the evidence analysis."  (*Id.* at 38.)

Sims responds he is not asking the Court to consider Morris' credibility, as Respondent maintains. (Doc. No. 10 at 11.) Sims asserts he is asking the Court to review the record and find that the evidence was insufficient to support the jury's verdict. (*Id.* at 12.) However, Sims then focuses on several factors going to Morris' credibility, including that she did not like Sims, she had a reason to identify him as the shooter, her testimony conflicted with the other three eyewitnesses, and Morris organized the group of people she drove to the scene and "repeatedly incit[ed] the conflict." (*Id.*)

The record reflects Sims raised a manifest weight of the evidence claim on direct appeal to both the state appellate court and the Supreme Court of Ohio. (Doc. No. 9-1, Ex. 19, 23.) The state appellate court considered this claim on the merits and rejected it as follows:

> {¶ 37} Appellant argues that the only evidence which showed he murdered Shaniece Wells was the testimony of the four eyewitnesses. Appellant argues that three of the eyewitnesses did not see who fired the shots that struck Shaniece. Appellant argues that the fourth eyewitness' testimony was so inconsistent with the other three eyewitnesses' testimony that it renders his verdict against the manifest weight of the evidence.

> {¶ 38} The claim that a verdict is against the manifest weight of the evidence concerns whether a jury verdict is supported by "the greater amount of credible evidence." *State v. Merritt*, 7th Dist. No. 09 JE 26, 2011-Ohio-1468 ¶ 45 citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The reviewing court weighs the evidence and all reasonable inferences and considers the credibility of the witnesses. *Thompkins* at 387. Although the appellate court acts as the proverbial "thirteenth" juror under this standard, it rarely substitutes its own judgment for that of the jury's. *Meritt* at ¶ 45. This is because the trier of fact was in the best position to determine the credibility of the witnesses and the weight due the evidence. *Id.* citing *State v. Higinbotham*, 5th Dist. No. 2005CA00046, 2006-Ohio-635.

23

{¶ 39} Only when "it is patently apparent that the factfinder lost its way," should an appellate court overturn the jury verdict. *Id.* citing *State v. Woullard*, 158 Ohio App.3d 31, 2001-Ohio-3395, 813 N.E.2d 964 (2d Dist.). If a conviction is against the manifest weight of the evidence, then a new trial is to be ordered. *Thompkins* at 387. "No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause." *State v. Miller*, 96 Ohio St.3d 384, 2002-Ohio-4931, 775 N.E.2d 498, ¶ 36 quoting Ohio Constitution, Article IV, Section 3(B)(3).

{¶ 40} The evidence appellant takes issue with in this assignment of error is the testimony of all four eyewitnesses: Julisa, Clenesha, Tamra, and Domanisha. The state agrees that the main contention at trial was who shot Shaniece Wells.

{¶ 41} Julisa testified that, while visiting Miguel at his home, she heard a gunshot, looked outside, and saw appellant. (Tr. 223-224). After the gunshot, Miguel and appellant began arguing (Tr. 225). Appellant pulled out a gun, set it down, and began physically fighting with Miguel. (Tr. 225). Julisa and her friends then left after having a verbal altercation with a group of girls outside of appellant's home which was across the street from Miguel's home. (Tr. 226-227). Julisa, Domanisha, and Julisa's sister then picked up Tamra, Clenesha, and Shaniece and returned to Miguel's home. (Tr. 228-229).

{¶ 42} Julisa continued to testify that when she and her friends returned to Miguel's home, they encountered the other group of girls outside of appellant's home and another argument ensued. (Tr. 231-232). Once Shaniece and a girl from the other group realized they were related, the argument between the two groups stopped. (Tr. 232). When Julisa and her friends started walking away, she heard a gunshot. (Tr. 233). Julisa ran and hid behind the car and heard another gunshot. (Tr. 234). Julisa saw Shaniece fall to the ground after the second shot and heard Shaniece say she was shot. (Tr. 234). Julisa did not see who fired the shots. (Tr. 234).

{¶ 43} Clenesha testified that Julisa and Domanisha came and picked her up. (Tr. 261-262). They then stopped to pick up Shaniece. (Tr. 265). When Clenesha arrived at Miguel's place, Clenesha and the rest of her group started

24

arguing with the other group of girls outside of appellant's home. (Tr. 267). Clenesha saw appellant standing in the doorway of his home. (Tr. 269-270). The argument stopped when Shaniece realized she was related to one of the girls in the other group. (Tr. 270-271).

{¶ 44} Clenesha continued to testify that after the argument, she and her group started walking down the street back to the car. (Tr. 274). While walking back, Clenesha heard a "gunshot and the glass." (Tr. 275). Clenesha then started to run towards the car. (Tr. 275). Clenesha heard two other gunshots after the first one. (Tr. 275-276). Clenesha heard Shaniece say "I got hit." (Tr. 276-277). After the shots were fired, Clenesha saw appellant outside of his house and then walk into his house. (Tr. 278-279).

{¶ 45} Tamra testified that Domanisha and Julisa picked her up and they all went to go pick up Shaniece. (Tr. 305-306). The group went to go check on Miguel after his physical altercation with appellant. (Tr. 307-308). Tamra and her friends encountered the other group of girls and a verbal altercation started. (Tr. 310-311). The argument ended when Shaniece realized she was related to one of the other girls. (Tr. 315).

{¶ 46} Tamra continued to testify that she and her group then started to walk towards the car. (Tr. 316). When they were walking, one gunshot was fired and the group started to run. (Tr. 317). After a pause, Tamra heard other shots but does not recall how many altogether. (Tr. 317-318). Shaniece was shot on the second round of shots. (Tr. 318-319). But Tamra did not see anyone with a gun that night (Tr. 324).

{¶ 47} Domanisha testified that she, Julisa, and Shamar were visiting their friend Miguel. (Tr. 352-353). Domanisha heard a gunshot and all of them went outside and saw appellant arguing with a neighbor. (Tr. 353-354). Domanisha remembers seeing appellant place a gun on a car and then appellant started "fighting the old man." (Tr. 355). The "old man" was Miguel. (Tr. 358). Around the time of the fight between appellant and Miguel, Domanisha and her group got into an argument with another group of girls. (Tr. 362-363). Domanisha and her group then left and picked up Clenesha, Tamra, and Shaniece. (Tr. 364-366). They then went back to go check on Miguel. (Tr. 367).

25

{¶ 48} When Domanisha and her group returned to Miguel's neighborhood, Domanisha saw appellant come out of his house, pull his shirt up, tap his waist, and told them to "move around." (Tr. 367-369). Domanisha saw appellant with a gun in his pants. (Tr. 369). The group then went to check on Miguel. (Tr. 371).

{¶ 49} Domanisha and her group then saw the other group of girls near appellant's home as they were about to leave. (Tr. 372). The two groups began arguing. (Tr. 374). The argument stopped once Shaniece and a girl from the other group realized they were related. (Tr. 375). Domanisha picked up a rock and threw it at appellant's house. (Tr. 375). Domanisha and her group then began walking back to their car. (Tr. 376).

{¶ 50} As Domanisha and her group were walking back to their car, Domanisha heard a gunshot. (Tr. 377). The group then ran and Domanisha leaned up against a garage. (Tr. 378). Domanisha saw Shaniece get shot. (Tr. 381). Domanisha testified that appellant was the one who shot Shaniece. (Tr. 382). Domanisha saw appellant fire the third shot. (Tr. 384-385). Domanisha heard appellant shout "I shot one of them bitches." (Tr. 387).

{¶ 51} Appellant argues that Domanisha's testimony is inconsistent with the other three witnesses. The inconsistencies appellant points to are:

    1) Domanisha testified that her group went to appellant's house before and after seeing Miguel (Tr. 368-369) while the other three testified that they went to appellant's house after checking on Miguel (Tr. 230, 265, 307-308);

    2) Domanisha testified that her group spoke to appellant before going to see Miguel (Tr. 369-371) while Clenesha testified that they did not talk to appellant (Tr. 270);

    3) Domanisha saw appellant fire the shots (Tr. 382) while the other witnesses did not see who fired the shots (Tr. 234, 275, 324);

    4) Domanisha testified that the other group of girls were getting out of a truck when her group arrived (Tr. 372) while the other

26

three witnesses testified that the other group was already at appellant's house (Tr. 231, 265-267, 310); and

5) Domanisha testified that Shaniece was walking when the first shot was fired (Tr. 380) while Tamra testified that Shaniece was running (Tr. 317-318).

{¶ 52} Appellant argues that these inconsistencies, coupled with the fact that Domanisha did not like appellant (Tr. 395) renders his conviction as against the manifest weight of the evidence. This argument does not have merit.

{¶ 53} The state elicited testimony that Shaniece died from a gunshot wound that struck one of her major arteries. (Tr. 578-580). There were three shell casings that were recovered from where Shaniece was shot and all three were fired from the same firearm. (Tr. 607-608).

{¶ 54} All four witnesses testified as to appellant's presence at the scene. Two of those witnesses testified that appellant had a firearm on him earlier in the night. All four testified that they heard three shots and heard Shaniece say that she was shot. Domanisha testified that she saw appellant fire the shots. Domanisha also heard appellant yell "I shot one of them bitches."

{¶ 55} Moreover, while Clenesha did not see who fired the shots, she testified that the only people outside when the shots were fired were her group and appellant. (Tr. 278-279).

{¶ 56} Although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility. *State v. Deltoro*, 7th Dist. No. 07-MA-90, 2008-Ohio-4815, ¶ 62. While Domanisha's testimony is somewhat inconsistent with the other three eyewitnesses, the jury was in the best position to assess Domanisha's testimony and we will not second-guess any determination concerning Domanisha's testimony made by the jury.

{¶ 57} Accordingly, appellant's second assignment of error lacks merit and is overruled.

27

*State v. Sims*, 2018-Ohio-2916, 2018 WL 3583271, at **5-7.

The Sixth Circuit has construed manifest weight of the evidence claims as sufficiency of the evidence claims on habeas review.  *Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (Petition asserted a manifest weight of the evidence claim, not an insufficiency of the evidence claim, but the Sixth Circuit interpreted petition "as a complaint that the state court erroneously found [Petitioner's] conviction to be supported by sufficient evidence.").  As the *Nash* court explained:

> On appeal to the Fifth Circuit Court of Appeals of Ohio, Nash argued that his conviction for felonious assault was against the manifest weight of the evidence, but he did not literally argue that there was insufficient evidence to support his conviction. Nevertheless, the sufficiency of the evidence issue was adequately passed upon by the Ohio courts because the determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence. The Ohio Court of Appeals, for instance, has explained that " '[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency.' Thus, a determination that a conviction is supported by the weight evidence will also be dispositive of the issue of sufficiency." *State v. Lee,* 158 Ohio App.3d 129, 814 N.E.2d 112, 115 (2004) (citations omitted). Therefore, the district court properly entertained Nash's sufficiency of the evidence claim because it has been effectively presented to the Ohio courts and was decided by the Ohio Court of Appeals.

*Id.* at 765.

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the

28

offense charged.  *In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).  The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses.  *Id.  See also Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record ... should be resolved in favor of the prosecution."  *Heinish v. Tate*, 1993 WL 460782 at *3 (6th Cir. 1993) (citing *Walker*, 703 F.3d at 969–70.)  *See also Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Consistent with these principles, the Supreme Court has emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.  First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (*per curiam*).  And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence

29

challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 132 S.Ct. 2060, 2062, 182 L.Ed.2d 978 (2012). Under this standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e ... inquire whether any rational trier of fact would conclude that petitioner ... is guilty of the offenses with which he is charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Id.* (emphasis in original) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)).

Upon careful review of the trial transcript, the Court finds the state appellate court reasonably determined Sims' conviction was supported by sufficient evidence. In resolving Sims' manifest weight of the evidence claim, the state appellate court accurately summarized the evidence of record and correctly identified the applicable law. As noted in the state appellate court opinion, earlier that evening Sims pulled out a gun, set it down, and began fighting with Miguel. (Doc. No. 9-1, Ex. 29, PageID #521; Doc. No. 9-1, Ex. 30, PageID #663.) Witnesses testified that another neighbor had confronted Sims that night for shooting into the air when his son was outside. (Doc. No. 9-1, Ex. 29, PageID #519-20; Doc. No. 9-1, Ex. 30, PageID #816-17, 829.) Clenesha Jackson and Dominisha Morris testified that Sims tapped his hip

30

and told them to "move around" when the women returned to later that night to confront the other group of women.  (Doc. No. 9-1, Ex. 30, PageID #580, 620, 677.)  Morris testified Sims lifted his shirt and she saw the gun.  (*Id.* at PageID #677.)  While Morris was the only eyewitness who testified seeing Sims fire at the victim, Jackson testified that after the shooting she saw Sims outside of his house and then walked quickly inside.  (*Id.* at PageID #586-87.)  Jackson did not see anyone else outside other than the women she was with and Sims after the shooting.  (*Id.* at PageID #587.)  Three .380 shell casings were found at the scene where the victim was shot.  (*Id.* at PageID #759-60, 803.)   Live rounds of .380 ammunition were found in Sims' house, as well as a holster.  (*Id.* at PageID #762, 816, 870.)

While Sims asserts there was insufficient evidence based on his interpretation of Morris' credibility and the inconsistency of her testimony with that of the three other eyewitnesses, it is not for this Court to weigh evidence or determine credibility.  *See Jackson*, 443 U.S. at 317-19; *Coleman*, 566 U.S. at 651.  While Sims interprets evidence in a light most favorable to him, that is not the standard – the Court must view the evidence in a light most favorable to the prosecution.  *Jackson*, 443 U.S. at 319.

There is no basis for this Court to conclude that the state court decision in this case involved an unreasonable determination of the facts or was contrary to, or involved an unreasonable application of, clearly established federal law.  Accordingly, it is recommended the Court find Grounds Three and Four lack merit.

31

## V. Conclusion

For all the reasons set forth above, it is recommended that the Petition be DENIED.


Date: August 2, 2021
                                             _s/ Jonathan Greenberg_
                                             Jonathan D. Greenberg
                                             United States Magistrate Judge


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  _See United States v. Walters_, 638 F.2d 947 (6th Cir. 1981); _Thomas v. Arn_, 474 U.S. 140 (1985), _reh'g denied_, 474 U.S. 1111 (1986).**